**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

THOMAS DWAYNE COOK *
*
v. * Case No. WDQ-10-269
*
BOBBY SHEARIN, WARDEN, et al. *
******

**MEMORANDUM**

Pending is Thomas Dwayne Cook's[1] petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions in the Circuit Court for Somerset County, Maryland. No evidentiary hearing is necessary. Local Rule 105.6 (Md. 2011). For the following reasons, the petition will be denied.

## I. Background

From May 10, 2006 to May 11, 2006, Cook was tried by a jury; he was found guilty of first-degree assault and two counts of reckless endangerment. Exh. 3 at 84-87. The Court of Special Appeals summarized the evidence:

> On October 30, 2004, Officer Fletcher was the supervisor of the East Compound of ECI [Eastern Correctional Institution]. At about 8 A.M. that morning, Officer Thomas Cook (no relation to appellant despite the nearly identical name) informed Officer Fletcher that appellant, who was serving a sentence for first-degree murder, had earlier called Officer Cook an "asshole" to his face.[FN] Officer Fletcher had supervised appellant for about six and a half years, and the two had had previous confrontations.
>
> Appellant was employed as a laundryman, and worked on the Bravo Tier (also known as the "B Tier") of Housing Unit 6 of the East Compound, where laundry machines were located. Officer Fletcher did not find Cook by the laundry machines, but instead found him nearby at the top recreation hall of B Tier. Officer Fletcher then summoned Cook to follow him downstairs, off B Tier, to a nearby foyer area, in relative privacy where other inmates would less likely hear their conversation. The foyer was in front of an observational control center, manned by COs [correctional officers] and protected by a glass wall.

[1] Cook is confined at the North Branch Correctional Institution. Warden Bobby Shearin is his custodian.

Once Officer Fletcher and Cook were together in the foyer, the critical events of the encounter transpired. The testimony presented at trial diverged. Officer Fletcher testified that he began to question appellant about whether he had called Officer Cook an asshole, and appellant became belligerent. Officer Fletcher then told appellant that he was "fired" from his job as a laundryman, and ordered appellant to "go lock into his cell" (i.e., return to his cell and close the door behind him). Instead of complying with the CO's directive, Cook ignored the order and walked away, with his back toward Officer Fletcher. The CO walked behind Cook and again ordered him to "lock in." Cook then spun around and punched the forehead of Officer Fletcher, who doubled over and put his hands over his face. Cook continued to hit Officer Fletcher's face and head, punching him a total of six to eight times. During Cook's assault, a second inmate joined in, kicking Officer Fletcher's face and head. Officer Fletcher then blacked out, and later regained consciousness in the emergency room of Peninsula Regional Medical Center ("PRMC").

On the day of the assault, Officer Powell was the supervisor of B Tier. She testified that she was nearby when Officer Fletcher questioned appellant about allegedly calling Officer Cook an asshole. After appellant refused to answer, Officer Fletcher ordered Cook to lock in. Cook then turned to walk away, but turned back and said, "I'm not going to have anyone disrespect me, you're treating me like a child." Cook punched Officer Fletcher in the face. Officer Powell pulled out a canister of mace that she was carrying and sprayed it in Cook's face, but he was undeterred, and continued to punch Officer Fletcher in the face and head. Officer Powell was then attacked by a second inmate, Letory Jones. She was the only witness who described her assault. Her testimony was as follows:

> [OFFICER POWELL]. [Cook] continued to throw punches at Fletcher. And another inmate came out of the day room and attacked me and pushed me into the foyer area. And that's when another officer observed the incident and called for help.
>
> ***
>
> [PROSECUTOR:] And you testified that this other person came out and pushed you out of the way. What if anything happened at that point?
>
> [OFFICER POWELL:] At that point he threw me up against the glass –
>
> THE COURT: He being?
>
> [OFFICER POWELL:] Letory Jones the other inmate.

> [OFFICER POWELL:] He pushed me up against the glass of our control center. And I think he tried to get me off of my feet or get the mace away from me, get me to drop it. At that time he let go of me and he ran back and joined in with – Letory Jones and Thomas Cook joined in together in beating Officer Fletcher.
>
> [PROSECUTOR:] And what did you do at that point?
>
> [OFFICER POWELL:] I went towards the tier area and started macing both inmates. And my mace ran out, it just emptied, the canister emptied. At that time I went to the control center to retrieve more mace which was given to me. And I went back to the area. When I got back to the area [Cook and Jones] were running into the day room.

She found Officer Fletcher bleeding profusely from his face, fading in and out of consciousness, while Cook and Jones sat peacefully in the day room. Other COs then reported to the scene, and Officer Powell rode with Officer Fletcher in an ambulance to PRMC.

Officer Vanessa Jones (no relation to Letory Jones) was a supervisor of Housing Unit 6 on the day of the incident, and she was manning the control center in front of which the assault occurred. From the control center, she observed Officer Fletcher and Cook conversing. She lowered her head to make an entry in a log book and, upon looking back up, saw Cook striking Officer Fletcher, then witnessed Letory Jones join in beating Officer Fletcher. She watched as Officer Powell used her mace, and when the canister ran out, Officer Jones provided Officer Powell a fresh can through a slot in the glass barrier of the control center. By the time Officer Powell returned to Officer Fletcher, the two inmates had left the scene. Officer Jones did not witness any assault upon Officer Powell.

Inmates Charles Cole and Troy Joyner gave nearly identical testimony for the defense. They each witnessed the conversation between Officer Fletcher and Cook, which ended when Cook said something like, "I'm not going to stand here and let you talk to me like I'm a child." According to Cole and Joyner, Cook turned to leave, but Officer Fletcher grabbed Cook by the arm. Cook then spun around and struck Officer Fletcher. Not wanting to be involved, the inmates left the scene immediately, without seeing the fight progress.

Cook testified in his own defense that, during the conversation with Officer Fletcher, the CO was the one acting belligerently. Appellant told Officer Fletcher that he had not called Officer Cook an asshole, then walked up a flight of stairs to the laundry machines, to check if his laundry was done. He found that it was not, returned to the foyer, where Officer Fletcher still was, and turned his back to the CO to speak to another inmate. Officer Fletcher then grabbed the arm of Cook, who reacted by "instinct" and turned around and struck the CO. According to

> Cook, the two "exchanged a few punches," until Officer Powell sprayed him with mace. Cook then left for the day room, where he washed the mace from his face.
>
> At PRMC, Officer Fletcher was examined by X-rays of his back and neck, as well as MRI and CAT scans (imaging studies used to assess the anatomy of the brain). Doctors heavily medicated him and then sent him home and instructed his spouse to keep him awake for twenty-four hours. The physician discharge summary stated that Officer Fletcher had suffered a "minor head injury." After discharge, he had several more MRI and CAT scans before the time of trial. Dr. Robert F. Baumann, a neurologist to whom Officer Fletcher was later referred, testified that on November 6, 2004, MRI came back negative for visible damage to the anatomy of the brain, meaning that there was no bleeding or anatomic disruption. On the other hand, Officer Fletcher testified that he had received damage to the frontal lobe. Nevertheless, this left open the possibility that Officer Fletcher suffered a concussion with attendant disruption of brain function at the biochemical level, which is what Dr. Baumann concluded had occurred. Dr. Baumann classified the damage as a "mild to moderate closed head injury" that was not life-threatening. By the time of trial, Officer Fletcher had recently retired as a CO due to his injury. According to his and Dr. Baumann's testimony, as a result of the assault, Officer Fletcher had suffered hearing loss in his right ear and ringing in his ears, dizziness, blurry vision, occasional extreme headaches, loss of balance, short-term memory loss, neck and lower back pain, and depression as a result of post-traumatic stress disorder. Dr. Baumann testified that Officer Fletcher's symptoms were typical of someone who had lost consciousness due to a head injury.
>
> There was no evidence that Officer Powell was physically injured during the incident, but up until the trial she was being counseled for stress.
>
> > [FN]We shall refer to CO Thomas Cook as "Officer Cook" and will refer to appellant Cook as either "appellant" or simply "Cook."

Exh. 7 at 1-6. On May 11, 2006, Cook was sentenced to serve 30 years in prison consecutive to any term then being served. Exh. 3 at 93-94.

On direct appeal, Cook raised two issues:

> (1) Whether the evidence was sufficient to sustain a conviction for first-degree assault against Lieutenant Fletcher based upon evidence that Appellant hit Fletcher in the face and head with his fists?
>
> (2) Whether the evidence was sufficient to sustain Appellant's convictions for reckless endangerment of Lieutenant Fletcher and Lieutenant Powell?

Exh. 4 at 2. The Court of Special Appeals affirmed Cook's convictions. Exh. 7 at 8-14. In a petition for writ of certiorari to the Court of Appeals, Cook asked for further review of only one issue: the sufficiency of the evidence to prove specific intent to inflict serious injury or death, as required for first-degree assault. Exh. 8 at 1. The Court of Appeals denied to review Cook's case by order dated December 11, 2009. Exh. 9.

## II. Analysis

### A. Standard of Review

The federal habeas statute, 28 U.S.C. § 2254, provides a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).[2] For cases involving the sufficiency of evidence, "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Where conflicting inferences can be drawn from the evidence, the reviewing court must

---

[2] A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* __ U.S. __, 130 S.Ct. 1855, 1862 (2010). The state court's application of Supreme Court precedent must be "objectively unreasonable." *Id.* This "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Id.* A state court's factual determination is unreasonable under § 2254(d)(2) when it is more than merely incorrect or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2006). It must be sufficiently against the weight of the evidence that it is objectively unreasonable. "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses[.]" *Marshall v. Lonberger*, 459 U.S. 422 (1983); *see also Cagle v. Branker*, 520 F.3d 320,324 (4th Cir. 2008).

presume "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. For the purposes of a federal habeas petition, the relevant inquiry for a sufficiency of the evidence claim is "whether a state court determination that the evidence was sufficient to support a conviction was an objectively unreasonable application of *Jackson*." *Williams v. Ozmint,* 494 F.3d 478, 489 (4th Cir. 2007); *see also McDaniel v. Brown,* ___ U.S. ___, 130 S.Ct. 665, 673-74 (2010) (evaluating a *Jackson* claim in accordance with the standard of review in § 2254(d)(1)).

### B. Cook's Claims

Here, Cook claims: (1) the evidence was insufficient to sustain his conviction for first-degree assault against Lt. Fletcher, and (2) the evidence was insufficient to sustain his convictions for reckless endangerment against Lt. Fletcher and Officer Powell.[3]

#### 1. First Degree Assault

Cook contends that the evidence at trial was insufficient to establish the specific intent required for first-degree assault, namely an intent to cause death or serious physical injury. Cook's argument is that his conduct was limited to striking Lt. Fletcher in the face and head with his fist. [ECF 1 at 7]. He further contends that the evidence suggested that the injury was not severe, but mild to moderate. [ECF 8 at 2].

In this case, the Court of Special Appeals considered the issue as follows:

> Section 3-202 of the Criminal Law Article, Md. Code (2002), defines the crime of first degree assault. In particular, § 3-202(a)(1) states: "A person may not intentionally cause or attempt to cause serious physical injury to another." The charging document filed by the State alleged that Cook committed first degree assault, in that he "did intentionally

---

[3] Cook's habeas petition actually includes four claims. ECF No. 1. Ground One relates to the sufficiency of the evidence for the **first-degree assault** conviction. Grounds Two, Three, and Four all relate to the sufficiency of the evidence for the reckless endangerment convictions, and are essentially duplicative. The "supporting facts" cited for Grounds Two, Three, and Four are also identical. As a result, Grounds Two, Three, and Four will be treated as a single ground, which, as described in Section B.2 below, has been procedurally defaulted.

cause serious physical injury to Officer A. Fletcher." Section 3-201(d) defines "serious physical injury" as:

> Physical injury that:
>
> (1) creates a substantial risk of death; or
> (2) causes permanent or protracted serious:
> (i) disfigurement;
> (ii) loss of the function of any bodily member or organ; or
> (iii) impairment of the function of any bodily member or organ.

A necessary element of first degree assault is that the defendant have "the specific intent to cause, or attempt to cause, serious physical injury." *Dixon v. State*, 364 Md. 209, 239 (2001). Where a defendant is charged with first degree assault, "a jury may infer the necessary intent from an individual's conduct and the surrounding circumstances, whether or not the victim suffers [serious physical] injury." *Chilcoat v. State,* 155 Md. App. 394, 403 (2004). In particular, "the trier of fact may infer that one intends the natural and foreseeable consequences of his or her conduct." *Thornton v. State,* 397 Md. 704, 735 n.15 (2007). Cook argues that the jury could not have found he possessed the requisite intent to cause serious physical injury, because he used no weapon and Officer Fletcher was not a "vulnerable person."

In this case, Cook does not specifically contest that he actually caused serious physical injury to Officer Fletcher. Even if the victim's life was not in danger, Officer Fletcher did suffer brain damage; he experienced a concussion, lost consciousness, and up until the time of trial continued to experience several symptoms of head trauma. Therefore, Officer Fletcher suffered a "permanent or protracted serious . . . impairment of the function" of his brain, a serious physical injury under § 3-201(d)(2)(iii). It is unclear how much of this injury was attributable to Jones, rather than Cook, but the jury could reasonably conclude that appellant, who was the first inmate to attack Officer Fletcher, was intentionally attempting to inflict serious physical injury by his repeated blows to Officer Fletcher's head.

A serious physical injury was not an anomalous result of pummeling a victim six to eight times about the head and face; to the contrary, it was a "natural and foreseeable consequence" of Cook's assault. *See State v. Lauer,* 955 S.W.2d 23, 25 (Mo. App. Ct. 1997) (finding sufficient evidence of intent to cause "serious physical injury" where appellant beat victim with his fists, causing a concussion); *see also Cathcart v. State*, 169 Md. App. 379, 393-94 (2006), *vacated on other grounds,* 397 Md. 320 (2007) (defendant beat his former girlfriend into unconsciousness by repeatedly punching her in the face); *Chilcoat, supra,* 155 Md. App. At 403-04 (finding sufficient evidence of intent where appellant hit victim's head several times with a beer stein, causing concussion, unconsciousness, and breaking victim's skull). The jury could reasonably infer that Cook intended to cause the serious physical injury he actually inflicted. Accordingly, we affirm the conviction for first degree assault.

Exh. 7 at 8-11.

Under the highly deferential standard applicable where a federal habeas court is reviewing a state court proceeding, it cannot be said that the state court's application of the *Jackson* standard was objectively unreasonable. *Jackson* requires that the evidence be viewed in the light most favorable to the prosecution, and that the court presume that the trier of fact resolved all inferences in favor of the prosecution. *Jackson*, 443 U.S. at 319, 326. In this case, there was testimony that Cook beat Lt. Fletcher repeatedly in the head and face. Exh. 2 at 71. As a result of the beating, Lt. Fletcher lost consciousness for a period of time. Exh. 2 at 71. Officer Powell observed Lt. Fletcher bleeding profusely and slipping in and out of consciousness. Exh. 2 at 107. Officer Jones testified that she observed Lt. Fletcher "badly hurt." Exh. 2 at 122. Lt. Fletcher's injuries forced him to retire from correctional work before Cook's trial. Exh. 2 at 79. Dr. Baumann testified that Lt. Fletcher suffered a concussion, which is a "disruption of brain function." Exh. 2 at 143. The jury saw photographs of Lt. Fletcher's injuries. Exh. 3 at 50. Although there was also evidence from which Cook's counsel argued that there was no serious physical injury, and that the injury was only mild or moderate, the evidence certainly permits the conclusion that the injury was serious, especially when all inferences are drawn in the prosecution's favor. Cook therefore cannot demonstrate that the state appellate court's analysis was an objectively unreasonable application of the *Jackson* standard. For that reason, habeas relief must be denied.

**2. Reckless Endangerment**

Cook concedes that his issues with respect to the reckless endangerment convictions have been procedurally defaulted. ECF No. 8 at 2. Cook raised the reckless endangerment claims on direct appeal to the Court of Special Appeals, but did not include them in his petition for writ of certiorari to the Court of Appeals. Exh. 8. "Because presentation of these claims to the state

court at this juncture would be fruitless, they properly are considered to be procedurally barred." *Mackall v. Angelone*, 131 F.3d 442, 450 (4th Cir. 1997); *see also George v. Angelone,* 100 F.3d 353, 363 (4th Cir.1996) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."). Where a claim is procedurally barred, it can be raised in habeas only if the defendant can demonstrate either "cause" and actual "prejudice," *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or "actual innocence," *Murray,* 477 U.S. at 496*; Smith v. Murray,* 477 U.S. 527, 537 (1986). Because Cook has not produced any evidence to meet either threshold, as he concedes, the reckless endangerment issue is procedurally defaulted.

**C. Certificate of Appealability**

The court finds that Cook is not entitled to a certificate of appealability ("COA"). A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make such a showing, the defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983). When a district court dismisses a habeas petition solely on procedural grounds, a COA will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack*, 529 U.S. at 484). Petitioner has not made the requisite showing in these circumstances. Denial of a COA does not prevent petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

**III. Conclusion**

For the reasons stated herein, Cook's petition will be denied.

Dated: 9/28/11

William D. Quarles, Jr.
United States District Judge